The case for this morning is Jane Doe against Vigo County, Indiana. Mr. Bowes. Good morning and may it please the court and counsel. My name is Greg Bowes and I represent Jane Doe. As the court already knows, when a district court is faced with a motion for the non-moving party, it is the all-competing inferences of the facts in favor of the non-moving party. And that is not what happened in the district court in this case. The court does something right and in fact the defendant, Vigo County, does the same thing right in its briefing where they correctly state the standards. They correctly state the law about when an employer would be held responsible for the tortious acts of an employee. But they deviate in their interpretation of the facts of this case. So one of the main points that both the district court and the defendant agree on is that if there are certain authorized acts by the employee mixed in with the unauthorized acts, then that would be something that should be saved for a jury decision and not taken away by a summary judgment. So in this case we have a whole bunch of facts that show this mixture of authorized and unauthorized facts. We have the employee. Okay, could I just say, I mean, so I take you to be discussing one of your state law theories, you know, one of your supplemental state law theories because the Monell issue is a separate issue. But it seems to me that the problem you run up against is that the Indiana Supreme Court, particularly in Barnett but in other cases, has taken a rather narrow view of respondeant superior liability where employer liability is appropriate only if an assault occurs when the situation is where physical contact would be expected, you know, a doctor or some sort of, you know, maybe a sports person, some kind of physical contact. Now that's not what the restatement of agency would say. The restatement of agency would say that if the employer has made the environment where the abuse happened possible, then it's still within the scope of employment. You think of the way the Supreme Court used that in Farragut and Ellert. But if it's a state law claim, the Indiana Supreme Court gets to make up the state law. And so I'm concerned that you're trying to swim upstream in a way that we're not empowered to do. Well, if you look at the state law claims now, I appreciate that Barnett has the statements it makes. But Barnett is relying on Strobe's case. And the Strobe's case lays out the groundwork for how to determine a case like this. If the authorized acts are mixed with unauthorized acts, then you leave that case to the jury. If the authorized acts are present to an appreciable extent mixed in with the... But Barnett postdates Strobe's. Correct. Barnett is 2008. So surely we need to look at their more recent expression. My point about that is that Barnett is not a survey of what Indiana should do generally as much as Strobe's is. Barnett is an application to the facts of that case. And in any case, Barnett does not discuss the Dixon case from 1893. 1893 is when they set up the common carrier exception and establishes a non-delegable duty. And those things were not discussed in Barnett. Well, but Barnett looks at exactly this argument. Barnett, you know, the plaintiff says it should be broader. And the defendants say, because the authorized job duties did not involve any physical contact, there's no vicarious liability. And the Indiana Supreme Court languages I read as siding with that. Other than perhaps a greeting handshake, the employee was not explicitly or impliedly authorized to touch or confine the applicants. So it's not an extension. Well, we do have a confinement that's a very big difference in this case. In this case, the employee... He was authorized to hold the key to the bathroom. He was authorized to be the only person in charge of that 400-acre park because his coworker was at a different park on that day. He was authorized to be in control of that bathroom with that key because the supervisor only came to the park every three weeks at most during the off-season that we had. He was the one driving her on the ATV to get to the bathroom. Well, he certainly authorized to drive her around. I can certainly see that. And I think that's what's important about this distinction, the question about Barnett. I believe Barnett makes the mistake that the district court made, which is where they look at the case and they have these established rules about interpreting facts in favor of the non-moving party and setting out these rules about how much authorized activity is mixed in with the unauthorized activity. We don't have any authority to disagree with the Barnett case. However much you may disagree with Barnett, we have to apply it. I believe that we have authority to agree with the Stropes case and the Dixon case because neither have been overruled. And they established the groundwork for how to decide this case. And if the Barnett case used that particular set of facts a certain way, those are not the same facts that are occurred in this case. The Barnett case established a fairly clear rule that unless the employment in question involves physical contact or entails physical contact as part of the authority that the employer grants to the employee, there can be no liability for these physical torts like sexual battery, criminal confinement for sexual battery purposes, et cetera. And that seems to be a fairly clear rule. And that governs here. So whatever auxiliary facts you are claiming the district court ignored here really don't make any difference if that rule controls, which it apparently does. Just to add one more point in response to that, in addition to what I've said already, you may notice from the briefing that we have suggested that the Indiana Supreme Court is considering a similar type of case involving two separate cases with police officers and that we have asked for the court at least to wait to hear the Supreme Court in Indiana. Well, this is not a police officer case. Police officers have physical contact with suspects, et cetera. That's part of their job. But alternatively, to address your concern that you can't overstep the Indiana Supreme Court, we did ask that you certify the question if that's appropriate in your mind. We do that when there's a lack of clarity. But as I said, the rule's pretty clear. All right. I'd like to reserve the rest of my time if I could. All right. You may. Mr. Friedrich? Thank you, Your Honor. May it please the court. I think as the court accurately indicated in some of the questions earlier when we were talking about the respondeat superior vicarious liability, I think when you look at the Strokes case, you look at Barnett, and you look at Southport Little League, I think the law is very clear in a particular situation about you heard the argument about authorized versus unauthorized acts, and we know what the law is. But I think what's, what counsel misses in its brief is that when you have a situation like this, is it the, not just whether it's an authorized activity, but is it closely related to the employer's, employee's activities. I think in this particular situation it wasn't. While Mr. Gray may have had, you know, access to the bathroom, he may have been able to drive the ATV, he may have been able to direct people to clean restrooms, he was not within his duties to physically assault another individual. Anything about that was not closely related to his activities. So I think it's implicit that it's got to be closely related or incidental to his employment, and it wasn't. I think Mr. Bose also spoke to the common carrier exception in talking about a case from 1893 and mentioned the strokes case. I think that was, that was not an issue that Ms. Doe brought up in the response to summary judgment. The first time it was brought up was on appeal. I believe as a result of that, it was waived. With that being said, I think when you move on to whether the common carrier exception applies, I think you again have to kind of look at the stroke situation which dealt with is there a non-delegable duty? And then look at some of the case law after that as to whether in this particular situation, is this a situation that the common carrier exception is really going to apply? Did Ms. Doe place herself in the situation where her care and safety was given up to Mr. Gray? She didn't. In this particular situation, she was not a volunteer. She was under a court order to complete community service, and she had gone to the Vigo County Parks Department to complete that community service. And so in the record, it shows there's indications when she had left the park at one time to leave and then came back. I don't think there's any evidence in the record that would show in her testimony that where she ever placed herself in such a position that she was ever going to be, her safety was going to be handled by the Vigo County Parks Department, that she had really kind of given up all autonomy to them. There's nothing, no evidence to show that whatsoever. Another argument made in the brief concerning the Monell claim, and that basically what Ms. Doe is arguing, is that there's an implicit policy in Vigo County of a series of assaults that occurred over a 20-year period to various individuals, whether it be an inmate, whether it be an employee within the county, or whether it be somebody outside, that there was just a prevalent, systematic abuse that was going on, and county officials ignored it. The first one goes back to 1996, almost 20 years before the incident involving Ms. Doe. We have a correctional officer assaulting an inmate. In that particular situation, that correctional officer was charged criminally and pleaded guilty to official misconduct and was terminated. Another incident brought up by Ms. Doe involved the Vigo County Recorder back in, I believe it was 2007, where this elected official was sexually harassing a co-worker within his office over about a year period of time. In that particular situation, the county authorized and hired an independent investigator. Once that investigation was completed, those facts were turned over to the Vigo County Prosecutor and criminal charges were filed. That particular individual pleaded guilty to battery as a result of those charges and resigned his position. There was also some talk, again, on the Monell, is that there were also problems going on within the Vigo County Parks Department that would, again, lead to this widespread pattern of practice of where there's a deliberate indifference as to these things going on. In this situation, there was a Parks Department employee that was found through a report that was sexually harassing a co-worker. The Vigo County Parks Department, when they received that complaint, interviewed the individuals. They also found that in addition to the harassing conduct, that this individual who was a mechanic at the Parks Department was also operating a business out of the Parks Department garage and using Parks Department supplies to fund his business. As a result of that, the Parks Department gave him the opportunity to either resign or be terminated. He chose to be terminated, or chose to be resigned, excuse me. And then there was another situation where there was another employee who had difficulty with other employees within the department. That individual was, again, given the opportunity because of, maybe it wasn't sexual, maybe it wasn't either resign or be terminated. He chose to resign. So I take it, obviously, your overall point, which you make in the brief, is that, first of all, there are not a great number of instances, and secondly, Vigo County took action, the re's not anything one could infer a policy of ignoring from. That's correct. That's your point. I think each time it was either termination, criminal conviction, or resignation. And I think another point made is that there's also an argument that Mr. Gray was negligently retained or hired by Vigo County based upon some past incidents that he had involved in. I think maybe just before a year or more before this incident occurred in the restroom, Mr. Gray had made an inappropriate comment or comments to a co-worker. The co-worker reported that to her supervisor. The Parks Department took immediate action, and they gave Mr. Gray a written reprimand. Mr. Gray signed that written reprimand, and I think from the employee's own testimony, who was the victim of that verbal sexual harassment, is that as soon as he made that comment and learned that it was inappropriate, he never made that comment again. I think that it was very clear from Ms. Slaughterbeck's testimony that she never felt uncomfortable around Mr. Gray again, and that again, what we have is a situation where was it reasonable for Vigo County to believe that because of this one incident a year before that involved a verbal harassment, that that was going to make it reasonable for the county to believe that a year and a half later that Mr. Gray was going to physically assault or sexually assault a community service person? I think it wasn't. I think in this situation is that you didn't have any physical contact in the first instance, that when that reprimand was given, Mr. Gray accepted it and never had any issues in his employment with this type of harassment again. And so in this particular situation, when you're dealing with, whether it was negligent retention or negligent training, is that Vigo County was not reasonable for them to believe looking at the circumstances that this type of contact was going to occur. And then finally, the last point made in Ms. Doe's brief concerned a change in policy that Vigo County did after this incident occurred. I think as the record shows, there's two maintenance specialists at each park within Vigo County that usually the senior person would be responsible for the community service workers that are there. In this situation, once this occurred, initially Vigo County stopped using community service workers in the parks department and eventually decided that when they were going to re-institute this practice, that only male maintenance specialists would deal with male community service workers and only female maintenance specialists would deal with female community service workers. The argument is that that's a subsequent remedial measure and that goes to the issue of duty. And as a result of that duty, it should have been foreseeable to Vigo County that Mr. Gray was going to sexually assault Ms. Doe. I think the law is very clear under the federal rules of evidence that when you have a subsequent remedial measure, it deals with culpability or negligence and that's exactly what the implication is here, is that if Vigo County made this change in their policy, then obviously they had to know that Mr. Gray was a problem. It was foreseeable to them to see this. I think, again, when you look at the total of the circumstances, there was nothing to indicate to Vigo County from the reasonable man standard that this type of assault was going to occur given the past and then, again, given the change in policy. So I think trying to use that change in policy against them when they're trying to prevent these type of things would not be fair to Vigo County and what will probably happen in situations like this, that if that's found to make Vigo County negligent, is that would any not-for-profit agency ever use a community service worker again when these type of things could happen? All right. I see no questions, so thank you very much. Thank you, Your Honor. Anything further, Mr. Bowes? Thank you, Your Honor. I did want to address the idea that under the Monell claim and the negligent supervision claim that we are on the opposite end of that question of whether the activity was within the scope of employment. We're looking specifically at the negligence of the employer, not based on the vicarious liability. And when you look at that under the Monell claim, they had a pattern of inaction. It's not much of a pattern, though. I mean, Mr. Friedrich just reviewed the various incidents and, I mean, it's an institution. I mean, things did happen, but they took corrective action each time. Well, the glaring one that they took inaction on was when they were faced with the employees who were putting their hands down the pants of one of the other employees and putting their hands down, and they allowed them to resign rather than be fired and rather than have their case turned over to the police. So they have to fire them? They can't get rid of them by allowing them to resign? This goes back to the question of the inferences. A jury could determine that as an inference, that they'll get a slap on the hand. It's more than a slap in the hand. You don't have your job anymore. Right, but you also aren't going to jail. Well, yeah. Nothing prevents the prosecutor. That's my point about the inference. And then with regard to the negligent supervision, it's not just what Mr. Gray did. It's the circumstances of his situation where he's alone in a 400-acre park, allowed to supervise one-on-one with a female. What troubles me about your theory, I mean, of course, we have a lot of things in today's world that are troublesome, but I'm very reluctant to announce as a matter of law that having a man and a woman work together under circumstances where they're sometimes or often alone is automatically a signal that the man is going to assault the woman. I mean, that seems so over-inclusive to me, I guess, to say the least. But I don't think you're announcing a policy when you're just merely allowing a jury to make that decision according to the facts of this case. No, I'm not sure I agree with that. Okay. And then I did want to point out that with regard to the subsequent remedial measure, the rule anticipates that that thing can be used when this court is trying to determine what a duty was. We are not trying to establish negligence, just what might be a duty. And so I see my time is done, and I appreciate your... ask you to remand, please. All right. Well, thank you very much. Thanks to both counsel. The court will take the...